**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PETER KLAH, | : | |
| | : | |
| Petitioner, | : | Civ. No. 16-8791 (PGS) |
| | : | |
| v. | : | |
| | : | |
| ATTORNEY GENERAL STATE OF | : | **OPINION** |
| NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

## I.     INTRODUCTION

Petitioner Peter Klah ("Petitioner" or "Klah") is a state prisoner proceeding *pro se* with a second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* ECF 42). For the following reasons, the second amended habeas petition is denied and a certificate of appealability shall not issue.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual background is taken from the New Jersey Superior Court, Appellate Division's opinion on Petitioner's direct appeal.

> Trenton Police Detective Matthew Przemieniecki and his partner, Officer Joseph D'Ambrosio, were driving an unmarked police patrol car near the intersection of Monmouth and Clinton Streets in Trenton on October 24, 2006, at 11:09 p.m., when Przemieniecki heard a gunshot and saw the muzzle flash of a gun being fired by defendant Peter Klah. According to Przemieniecki, after hearing the gunshot and turning his head to the right in the direction of the gunshot sound, he put his car in reverse to turn down Monmouth street. He then had an unobstructed view as he watched defendant fire a handgun at a man running down the sidewalk, who was later identified as the victim, Charles Bennett. Przemieniecki then observed defendant enter a silver Buick. Przemieniecki radioed surrounding units and headquarters, relaying what he had

witnessed and indicating that the shooter was traveling down Monmouth Street in a silver Buick. A marked police car, driven by Officer Samuel Gonzalez, pulled into the intersection of Walnut and Monmouth Streets to cut off the silver Buick's path.

Upon exiting his vehicle, Przemieniecki approached the driver's side of the silver Buick with his weapon drawn; his partner approached the passenger side. According to Przemieniecki, he "approach[ed] the vehicle[,] ... opened the driver-side door and removed the driver Chad Dillard from the vehicle." At the suppression hearing, Przemieniecki related the events that followed.

> Q: Were you able to get the occupants out?
> A: Yes....
> Q: And were both occupants asked out of the— removed from the vehicle at that point?
> A: They were.
> Q: Now, initially when the occupants were removed from the vehicle, were they patted down for your safety?
> A: Absolutely.
> Q: Were any weapons located on Dillard at that point?
> A: No ...
> Q: After the occupants were removed from the vehicle, ..., were the doors left open or closed?
> A: They were left open....
> Q: What did you do next?
> A: Once ... both occupants were secured, they were put into police vehicles, made sure the car was secured and [I] basically just stood by to make sure everything was ... the whole scene was secured....
> Q: After those two individuals were secured, did you have occasion to look in the interior of the vehicle?
> A: Yes, we did.
> Q: And particularly why did you look in the vehicle?
> A: Again, because we just saw an individual enter that same vehicle that just got done firing a handgun so—
> Q: And no weapons were found on the occupants as you got them out?
> A: Absolutely....

> Q: When you looked in the vehicle, what if
> anything did you see?
> A: Saw a clear bag.
> Q: And based on your training and experience, what
> did the bag look to have ... or contain ...
> A: It looked to contain suspected CDS marijuana....
> Q: In addition to the CDS, Detective, did you
> observe any other contraband in the vehicle at that
> time?
> A: Yes.
> Q: And what did you observe?
> A: Handle of what appeared to be a handgun.

Przemieniecki did not touch or seize either item of contraband, and
a search warrant for the car was subsequently obtained. Detective
Thomas Ertel, an employee of the Trenton Police Department
Crime Scene Unit, responded to the scene of the shooting,
photographed the scene and removed the handgun and marijuana
from the car. Additionally, Detective Mark Berkeyheiser, also
from the Trenton Police Department Crime Scene Unit, recovered
four shell casings from the sidewalk in the area where
Przemieniecki had observed defendant standing.

Officer Douglas Moreland heard the radio call about shots being
fired and headed to the area to determine if anyone had been
struck. He observed a female screaming and pointing to a black
male, later identified as Charles Bennett, lying face down in the
street. Bennett was dead.

Dr. Raafat Ahmad, the Mercer County medical examiner,
performed an autopsy on the victim's body and found the victim
had been shot four times. At trial, Dr. Ahmad testified that the
cause of death was perforating gunshot wounds to the heart and
lungs. She opined that the manner of death was "homicide."

The handgun retrieved from the vehicle, the spent shell casings,
and the bullet recovered from the victim's body were forwarded to
the New Jersey State Police Laboratory. Detective James Ryan, a
firearms expert employed as a supervisor in the New Jersey State
Police ballistics unit opined that the bullet and shell casings
recovered from the crime scene were fired from the weapon found
in the vehicle.

At the hearing on the motion to suppress, defendant argued that the
contraband was not in plain view; he also challenged the
constitutionality of his seizure on the grounds that the police

lacked probable cause to stop him. Judge Kelly denied the motion, concluding:

> I just don't find there's any justification for me to find that there was a violation of constitutional rights here by the stop and seizure of these two parties under the totality of these circumstances here ... [there was] a particularized suspicion that at least when you see somebody shooting a handgun in the middle of the street after 11 o'clock at night in the City of Trenton, ... at someone who was running down the street, there's enough there in my opinion to justify that stop.

*State v. Klah*, No. A-1271-10T3, 2012 WL 2427809, at *1–2 (N.J. Super. Ct. App. Div. June 28, 2012). Petitioner was found guilty of first-degree murder, second-degree possession of a weapon for an unlawful purpose, third-degree theft by receiving stolen property and third-degree possession of a controlled substance with intent to distribute on or near school property.

> After appropriate mergers, the trial judge sentenced defendant on the murder charge to an aggregate minimum term of seventy-five years' imprisonment, subject to an eighty-five percent minimum period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43–7.2. The sentences on the other convictions were to run concurrent to the sentence imposed on the murder conviction.

*Klah*, 2012 WL 2427809, at *1.

The New Jersey Superior Court, Appellate Division affirmed the judgment of conviction on direct appeal. *See id.* The New Jersey Supreme Court denied certification on Petitioner's direct appeal. *See State v. Klah*, 65 A.3d 834 (N.J. 2013).

> On December 27, 2013, Petitioner filed a post-conviction relief ("PCR") petition in the Law Division raising several ineffective assistance of trial counsel claims. (ECF No. 1 ¶¶ 1 l(a)(3)-(5)). The PCR court denied the petition without an evidentiary hearing on June 30, 2014. (ECF No. 1 ¶¶ 11(a)(7)-(8)). The Appellate Division affirmed, *State v. Klah*, No. A-5844-13, 2016 WL 1418315 (N.J. Super. Ct. App. Div. Apr. 12, 2016), and the New Jersey Supreme Court denied certification on September 23, 2016, *State v. Klah*, 151 A.3d 969 (N.J. 2016).

4

> Petitioner submitted his § 2254 to this Court on November 24,
> 2016. (ECF No. 1). He indicated in his petition that he mailed a
> second PCR petition to the Law Division on November 23, 2016.
> (ECF No. ¶ 15). Petitioner filed an Amended Petition on December
> 16, 2016. (ECF No. 3). The Court ordered an answer or a motion
> to dismiss based on timeliness from Respondent on January 25,
> 2017. (ECF No. 6). Respondents filed their answer on June 12,
> 2017. (ECF No. 12).

*Klah v. Attorney Gen. of New Jersey*, No. 16-8791, 2018 WL 3105427, at *1 (D.N.J. June 25,

2018). Thereafter, Petitioner moved for a stay and abeyance of this action so he could pursue a

second PCR petition which was granted. *See id.* at *2-3.

In March, 2019, Petitioner filed a second amended habeas petition (*see* ECF 42). The

second amended habeas petition raises the following claims:

1. Petitioner's motion to suppress was improperly denied because Detective
   Przemieniecki's testimony was a pretextual fiction designed to conceal an unlawful
   warrantless search of the vehicle ("Claim I").

2. The trial court erred in charging the jury on flight ("Claim II").

3. Comments made by the prosecutor during his opening statement prejudiced Petitioner's
   right to a fair trial ("Claim III").

4. Dr. Ahmed's testimony that the cause of death was homicide was plain error ("Claim IV").

5. Petitioner's seventy-five year sentence was manifestly excessive ("Claim V").

6. Trial court error in admitting crime scene evidence ("Claim VI").

7. Ineffective assistance of counsel in failing to call witnesses who would have challenged
   the state's theory of the case ("Claim VII").

8. Ineffective assistance of counsel in failing to retain a ballistics expert ("Claim VIII").

9.  Ineffective assistance of counsel in failing to move to sever or object to evidence and appellate counsel's ineffectiveness for not raising this claim on appeal ("Claim IX").

10. Ineffective assistance of counsel in failing to object to the opening and closing statements of the prosecutor and appellate counsel's ineffectiveness for not addressing the state's vouching for the police officer witness in closing argument ("Claim X").

11. Reserving the right to raise additional issues ("Claim XI").

12. Cumulative error deprived Petitioner of his due process and fair trial rights ("Claim XII").

In May, 2019, the stay was lifted. (*See* ECF 44). Respondents filed a response to the second amended habeas petition in September, 2019. (*See* ECF 51). Thereafter, Petitioner filed a reply in support of his second amended habeas petition. (*See* ECF 55-2).

## III.   LEGAL STANDARD

A writ of habeas corpus for a person in custody under judgment of a state court can be granted only for violations of the Constitution, laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Because Petitioner filed his petition for writ of habeas corpus after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). Having identified the governing principle of federal law, a habeas court must also ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" one to meet; it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (federal courts should "look through" later unexplained state court orders to find the last related state court decision that does provide a relevant rationale); *Blystone v. Horn*, 664 F.3d 397, 417 n.15 (3d Cir. 2011). Furthermore, though

AEDPA deference remains appropriate even as to summary state court rulings, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## IV.    DISCUSSION

### A.   Claim I

Petitioner asserts in Claim I that the trial court erred in denying his motion to suppress in because the officer conducted an unlawful warrantless search of his vehicle. In *Stone v. Powell,* 428 U.S. 465 (1976), the United States Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 494. This bar applies whether the claim is potentially meritorious or not. *See Deputy v. Taylor,* 19 F.3d 1485, 1491 (3d Cir. 1994).

Petitioner does not claim he has not had a full and fair opportunity to litigate this Fourth Amendment claim. Indeed, he raised this claim in the trial court and on direct appeal where it was rejected. *See Klah*, 2012 WL 2427809, at *3-5. Thus, he is not entitled to federal habeas relief on his claim that the state court decided his motion to suppress in error pursuant to the *Stone* bar.

In his reply brief Petitioner also alludes to the purported failure of the arresting officers to read him his warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See* ECF 55-2 at 13-14). At the outset, this Court notes that raising this claim for the first time in his reply brief as

opposed to Petitioner's amended habeas petition is grounds enough to deny this claim. *See*

*McNeil v. Johnson*, No. 18-10003, 2019 WL 3805118, at *1 (D.N.J. Aug. 12, 2013) (collecting

cases and noting the impropriety of raising a habeas claim for the first time in a reply brief).

Furthermore, it appears to be unexhausted by Petitioner's failure to raise it in state court. *See,*

*e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (announcing the rule "requiring state

prisoners to file petitions for discretionary review when that review is part of the ordinary

appellate review procedure in the State"); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not

be deemed to have exhausted the remedies available in the courts of the State, within the

meaning of this section, if he has the right under the law of the State to raise, by any available

procedure, the question presented."). Nevertheless, this Court can still deny an unexhausted

claim on the merits provided it is not "colorable." *See Carpenter v. Vaughn,* 296 F.3d 138, 146

(3d Cir. 2002) (quoting *Lambert v. Blackwell,* 134 F.3d 506, 514–15 (3d Cir. 1997) (construing

28 U.S.C. § 2254(b)(2))); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State.").

   Petitioner asserts he "was never read his [*Miranda*] rights and as the officer stated, he

was not under arrest therefore, the State should have dismissed the case." (ECF 55-2 at 13).

Petitioner claims then that the mere failure to read him his *Miranda* rights constitutes a

constitutional violation in and of itself, warranting dismissal of his criminal convictions.

However, the United States Supreme Court has noted:

> Our cases also make clear the related point that a mere failure to
> give *Miranda* warnings does not, by itself, violate a suspect's
> constitutional rights or even the *Miranda* rule. So much was
> evident in many of our pre-*Dickerson* cases, and we have adhered
> to this view since *Dickerson. See Chavez,* 538 U.S., at 772–773,
> 123 S. Ct. 1994 (plurality opinion) (holding that a failure to read

> *Miranda* warnings did not violate the respondent's constitutional rights); 538 U.S., at 789, 123 S. Ct. 1994 (Kennedy, J., concurring in part and dissenting in part) (agreeing "that failure to give a *Miranda* warning does not, without more, establish a completed violation when the unwarned interrogation ensues"); *Elstad, supra,* at 308, 105 S. Ct. 1285; *Quarles,* 467 U.S., at 654, 104 S. Ct. 2626; *cf. Chavez, supra,* at 777–779, 123 S. Ct. 1994 (Souter, J., concurring in judgment). This, of course, follows from the nature of the right protected by the Self–Incrimination Clause, which the *Miranda* rule, in turn, protects. It is "'a fundamental *trial* right.'" *Withrow,* 507 U.S., at 691, 113 S. Ct. 1745 (quoting *United States v. Verdugo–Urquidez,* 494 U.S. 259, 264, 110 S. Ct. 1056, 108 L.Ed.2d 222 (1990)). *See also Chavez,* 538 U.S., at 766–768, 123 S. Ct. 1994 (plurality opinion); *id.,* at 790, 123 S. Ct. 1994 (Kennedy, J., concurring in part and dissenting in part) ("The identification of a *Miranda* violation and its consequences, then, ought to be determined at trial").
>
> It follows that police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda.* Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, "[t]he exclusion of unwarned statements ... is a complete and sufficient remedy" for any perceived *Miranda* violation. *Chavez, supra,* at 790, 123 S. Ct. 1994

*United States v. Patane*, 542 U.S. 630, 641–42 (2004) (plurality opinion); *see also Lee v. Emps. of Union Twp. Mun. Court*, No. 17-4229, 2018 WL 1535266, at *5 (D.N.J. Mar. 28, 2018) (quoting *Patane* plurality opinion that failure to give *Miranda* warnings by itself does not violate a suspect's constitutional rights, much less the *Miranda* rule).

In this case, Petitioner's *Miranda* claim is not related to the exclusion of unwarned statements at trial. Instead, Petitioner seeks the dismissal of his criminal case in its entirety for the officers' purported failure to give *Miranda* warnings. As the plurality noted in *Patane*, however, this purported failure, in and of itself, does not constitute a constitutional violation. Thus, Petitioner fails to show that this *Miranda* claim is "colorable."

Accordingly, for the foregoing reasons, Claim I is denied.

B. <u>Claim II</u>

Petitioner argues in Claim II that the trial court erred in charging the jury on flight. The last reasoned decision on this claim was from the Appellate Division on Petitioner's direct appeal which analyzed this claim as follows:

> Evidence of flight is generally admissible because it tends to demonstrate a consciousness of guilt and is regarded as probative of guilt. *State v. Mann,* 132 N.J. 410, 418 (1993). A mere departure from the area does not, however, imply guilt. *State v. Sullivan,* 43 N.J. 209, 238 (1964). For a departure to constitute flight, "there must be circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt ." *Id.* at 238–39. A jury may find that a defendant fled the scene of a crime by finding that he or she left intending to avoid apprehension for that crime. *State v. Wilson,* 57 N.J. 39, 49 (1970). The propriety of admitting evidence of flight and charging the jury on flight depends on
>
>> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.
>
> [*State v. Latney,* 415 N.J. Super. 169, 176 (App. Div.2010).]
>
> In *Latney,* we concluded that the trial court erroneously charged the jury on flight because there was no evidence that the defendant's flight resulted from consciousness of guilt for the crime charged as opposed to consciousness of guilt for another crime previously committed. *Id.* at 176–77.
>
> The facts in the record show that defendant left the scene and did not respond when the detective activated his overhead lights. He did not stop while Przemieniecki pursued him en route until another patrol car cut it off.
>
> We are satisfied that the charge was not erroneous. Although the issue of flight was contested, ultimately, the jury could make a finding as to the nature of defendant's conduct.

11

*Klah*, 2012 WL 2427809, at *5.

Habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights. *See Echols v. Ricci,* 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire,* 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")); *see also Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (same). Furthermore, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Duncan v. Morton,* 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

The Appellate Division's denial of this claim was not an unreasonable application of or contrary to clearly established federal law. The flight charge did not so infect the trial that Petitioner's convictions violated due process considering the facts in the record. By way of example only as explained by the Appellate Division, Petitioner's vehicle did not stop initially when Detective Przemieniecki activated his emergency lights in pursuit after seeing Petitioner shoot the victim. (*See* ECF 12-5 at 32-33). Accordingly, Claim II is denied.

C. Claim III

In Claim III, Petitioner asserts that the prosecutor's comments during his opening statement violated his right to a fair trial. Petitioner takes issue with the following comments that began the prosecutor's opening statement:

> On October 24th, 2006, shortly after eleven p.m., Charles Bennett was drawing his final breath. His teeth were smashed because he fell face forward onto the sidewalk. His life boomed through the holes in his chest. The person who put those holes in his chest sits before you today, this man right here, Peter Klah.

(ECF 12-5 at 19).

12

The last reasoned decision on this claim was from the Appellate Division during

Petitioner's direct appeal which analyzed this claim as follows:

> Prosecutors are tasked with striking a "balance between promoting
> justice and achieving a conviction." *State v. Williams,* 113 N.J.
> 393, 447 (1988). Opening remarks geared solely at eliciting an
> emotional response from the jury are inappropriate because they
> tend to shift the focus away from the evidence, thereby producing a
> result fueled by the jurors' emotions rather than an independent
> review of the State's evidence. *Black, supra,* 380 N.J. Super. at
> 594–95 (finding a prosecutor's summation that discussed how
> medical examiners had to remove the organs from a child's body to
> determine the cause of death to be inappropriate because it was
> intended to appeal to the jurors' emotions). The Court has
> recognized that "criminal trials are emotionally charged
> proceedings. A prosecutor is not expected to conduct himself in a
> manner appropriate to a lecture hall. He is entitled to be forceful
> and graphic in his summation to the jury, so long as he confines
> himself to fair comments on the evidence presented." *State v.
> Frost,* 158 N.J. 76, 83 (1999) (citation omitted).
>
> The prosecutor's language was evidently designed to create a vivid
> mental image of the events that took place on October 24, 2006,
> but it did not mischaracterize the evidence. *Cf. Frost, supra,* 158
> N.J. at 85. On the contrary, the prosecutor's opening remarks were
> consistent with evidence introduced during the trial. Even if these
> remarks overstated the prosecution's case, we conclude that the
> remarks were incapable of producing an unjust result. *Cf. Atwater,
> supra,* 400 N.J. Super. at 337.

*Klah,* 2012 WL 2427809, at *6 (footnote omitted).

A criminal defendant's due process rights are violated if prosecutorial misconduct renders

a trial fundamentally unfair. *See Darden v. Waingright,* 477 U.S. 168, 182–83 (1986). A habeas

petition will be granted for prosecutorial misconduct only when the misconduct "so infected the

trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181

(internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in

"light of the record as a whole" in order to determine whether the conduct "had a substantial and

injurious effect or influence" on the jury's verdict. *See Brecht v. Abrahamson,* 507 U.S. 619, 638,

(1993). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001).

Respondents assert that "[t]his claim was never brought before any state court." (ECF 51 at 13). Thus, according to Respondents, this claim is unexhausted and the second amended habeas petition should be dismissed as a "mixed" petition. (*See id.* at 13-14).

Respondents' argument is factually incorrect. Petitioner raised this claim during his direct appeal proceedings to the Appellate Division which denied the claim on the merits as indicated above. Furthermore, Petitioner raised all his claims that he raised to the Appellate Division to the New Jersey Supreme Court. (*See* ECF 12-15 at 5). The New Jersey Supreme Court denied the petition for certification without comment. *See Klah,* 65 A.3d 834. Thus, Claim III is deemed exhausted. *See Riddick v. Edmiston,* 894 F.2d 586, 589 (3d Cir. 1990); *see also Williams v. Hendricks,* No. 00-4795, 2009 WL 2169230, at *4 (D.N.J. July 21, 2009) (noting where Appellate Division denied claim as being without merit and New Jersey Supreme Court denied certification, claim would be considered exhausted). Accordingly, this Court will apply AEDPA deference in analyzing the Appellate Division's denial of this claim as it is deemed exhausted.

The Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Indeed, as noted by the Appellate Division, the prosecutor's comments were based on evidence that was submitted at trial. For example, the medical expert, Dr. Ahmad, testified that the victim had bullet holes in the back of his body - four entrance wounds and three exit wounds with one protruding bullet. (*See* ECF 12-6 at 49). Dr. Ahmad also testified that the victim's damage to his mouth was consistent with him falling

face down onto the concreate or sidewalk. (*See id.* at 54). Accordingly, the challenged language by the prosecutor during his opening statement was backed up by evidence produced at trial such that the statements did not so infect the trial with unfairness to violate Petitioner's due process rights.

Additionally, it is worth noting that the jury was instructed as follows:

> Regardless of what counsel said or I may have said recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, *openings* and summations of counsel are not evidence and must not be treated as evidence. Although the attorneys may point out what they think is important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.

(ECF 12-7 at 40) (emphasis added). The jury is presumed to have followed these instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Accordingly, given the evidence produced at trial, coupled with the trial judge's instructions about counsel's statements not being evidence, the denial of this prosecutorial misconduct claim was not an unreasonable application nor contrary to clearly established federal law. Thus, Claim III is denied.

D.  Claim IV

Petitioner argues in Claim IV that Dr. Ahmad's testimony that the cause of death was homicide was irrelevant and prejudicial. The last reasoned decision on this claim was from the Appellate Division during Petitioner's direct appeal which analyzed this claim as follows:[1]

> We reach the same result regarding defendant's argument that his right to a fair trial was prejudiced by the medical examiner's

---

[1] Respondents once again argue Claim IV is unexhausted because it was never raised in the state courts. (*See* ECF 51 at 14-15). However, for similar reasons as discussed in Claim III, this claim is exhausted as Petitioner raised it on direct appeal to the Appellate Division which denied it on the merits as well as to the New Jersey Supreme Court in Petitioner's request for certification to the New Jersey Supreme Court.

testimony that the cause of death was homicide. Defendant did not object to the medical examiner's testimony; therefore, his argument on appeal must be viewed utilizing the plain error standard. *State v. Baluch,* 341 N.J. Super. 141, 184–85 (App. Div.), *certif. denied,* 170 N.J. 89 (2001).

In *Baluch,* in response to an argument identical to that which defendant advances here, we concluded that the medical examiner's testimony that the cause of death was homicide "was the functional equivalent of ruling out the possibility that [the victim's] multiple injuries were self-inflicted or sustained as a mere result of inadvertence (i.e., accident)." *Id.* at 185. We explained that the testimony "was neither the expression of a forbidden lay opinion unnecessary to the determination of a fact in issue within the ken of an average juror, nor a prohibited direct opinion that defendant was guilty of any form of homicide. Rather, it was a legitimate expert opinion that the instrumentality and manner of [the victim's] death were ... a human agency [and] ... another human being." *Ibid.*

This is not an instance in which the medical examiner expressed a direct opinion as to defendant's guilt. Here, the medical examiner did not testify that defendant murdered or recklessly caused the death of the victim. Instead, the medical examiner's testimony supported a finding that the victim's death was caused by another human being, by excluding all other possible causes of death, such as natural causes or self-inflicted wounds. *See State v. Odom,* 116 N.J. 65, 77 (1989). *Cf. State v. Jamerson,* 153 N.J. 318, 337–41 (1998) (finding testimony that a death was "homicide" to be inappropriate and restricting a forensic pathologist's testimony to the subject of mechanics of death).

Moreover, any error arising from Dr. Ahmad's testimony was harmless. Even if the medical examiner's testimony were excluded the evidence was unrefuted that the victim died of four gunshot wounds, which a police officer observed defendant inflicted on the victim.

*Klah,* 2012 WL 2427809, at *6–7.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'")

(quoting *Lewis v. Jeffers,* 497 U.S. 764, 680 (1990)). Thus, a petitioner cannot obtain relief for any purported errors in the state law evidentiary rulings at his criminal trial, unless they rise to the level of a deprivation of due process. *See Estelle,* 502 U.S. at 70 ("[T]he Due Process Clause guarantees fundamental elements of fairness in a criminal trial.") (quoting *Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)). For a petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *See Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (holding that admission of evidence may violate due process where the evidence is so inflammatory as to "undermine the fundamental fairness of the entire trial"); *see also Cox v. Warren,* No. 11–7132, 2013 WL 6022520, *8 (D.N.J. Nov.13, 2013). Additionally, a petitioner is not be entitled to federal habeas relief for any admission of testimony that is considered harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (alleged errors which do not have a "substantial and injurious effect or influence in determining the jury's verdict" are considered harmless and do not warrant federal habeas relief).

The Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Dr. Ahmad's testimony did not rise to the level to deprive Petitioner of his due process rights for the reasons given by the Appellate Division. Furthermore, its harmless error finding was not contrary to or an unreasonable application of clearly established federal law given the testimony produced against Petitioner at trial that implicated him in the crime, which included eyewitness testimony as well as ballistic evidence. Accordingly, Claim IV is denied.

E.   <u>Claim V</u>

In Claim V, Petitioner asserts that his seventy-five-year sentence for murder was manifestly excessive and that the trial court misapplied its sentencing discretion. The last reasoned decision on this claim was from the Appellate Division on Petitioner's direct appeal which analyzed this claim as follows:[2]

> Defendant argues that his sentence is excessive and represents a clear misapplication of the trial court's sentencing discretion because the court did not "place on the record a qualitative analysis of its reasons why the aggravating factors present merited the imposition of the extra-minimum sentence."
>
> Criminal sentences are subject to limited appellate review. *State v. Cassady,* 198 N.J. 165, 180 (2009). Despite this limited review, "'appellate courts are expected to exercise a vigorous and close review for abuses of discretion by the trial courts[.]'" *Ibid.* (quoting *State v. Jarbath,* 114 N.J. 394, 401 (1989)). In reviewing a defendant's sentence, we may not substitute our own judgment for that of the trial court. *Cassady, supra,* 198 N.J. at 180. We must assess the trial judge's application of aggravating and mitigating factors to determine whether it is based on substantial credible evidence in the record. *State v. Bieniek,* 200 N.J. 601, 608 (2010). We will modify a sentence "when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." *State v. Roth,* 95 N.J. 334, 364 (1984).
>
> In sentencing defendant, Judge Billmeier applied the following factors: the nature and circumstances of the offense, N.J.S.A. 2C:44–1a(1); the risk that defendant would commit another offense; N.J.S.A. 2C:44–1a(3); the extent of defendant's prior criminal record, N.J.S.A. 2C:44–1a(6); and the need to deter him and others from violating the law, N.J.S.A. 2C:44–1a(9). He found no mitigating factors. He then sentenced defendant to seventy-five years' imprisonment for first-degree murder.
>
> Judge Billmeier's findings regarding the aggravating and mitigating factors are supported by substantial credible evidence in the record. Judge Billmeier recited, on the record, defendant's criminal history, which included charges filed against defendant on

---

[2] As with Claims III and IV, Respondents mistakenly argue that this claim is unexhausted because Petitioner never raised it in the state courts. (*See* ECF 51 at 16-17). This argument with respect to Claim V is also factually inaccurate.

twenty-six occasions, resulting in eight municipal court convictions, two New Jersey Superior Court convictions, one North Carolina misdemeanor, and five Pennsylvania convictions, four of which were misdemeanors. For these various infractions, defendant received fines, the loss of his driver's license, probation or confinement in county jail. The judge's conclusion that aggravating factors (1) and (3) were present is supported by substantial credible evidence. Judge Billmeier's conclusion that aggravating factor (9) applied is likewise supported by substantial credible evidence. The judge found that defendant "led a life ... where you constantly disregard the rules and laws of our society." The judge's finding of no mitigating factors is also supported by the record. While defendant does have a daughter, the judge concluded defendant was not her sole caregiver and, noted that he had a substantial arrearage in child support payments.

The seventy-five year sentence is within the statutorily permitted range for first-degree murder. N.J.S.A. 2C:11–3b(1). The sentence imposed does not shock the judicial conscience.

*Klah*, 2012 WL 2427809, at *7–8.

As a court in this District has aptly noted:

"A federal court's ability to review state sentences is limited to challenges based upon proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'" *Merritt v. Bartkowski*, No. 11–3756, 2013 WL 4588722, at *15 (D.N.J. Aug. 28, 2013) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted)). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). *See also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 62, 67.

*Burns v. Warren*, No. 13–1929, 2016 WL 1117946, at *43 (D.N.J. Mar. 22, 2016). With respect

showing that a sentence is cruel and unusual,

[t]he Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." *Ewing v. California,* 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment

19

challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes. *United States v. Rosenberg,* 806 F.2d 1169, 1175 (3d Cir.1986); *Miknevich,* 638 F.3d at 186 ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment ... because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes.").

The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. If the defendant fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing,* 538 U.S. at 21, 123 S. Ct. at 1185 (quoting *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382 (1980)).

*United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).

Petitioner fails to demonstrate that the Appellate Division's denial of this claim was contrary to or an unreasonable application of clearly established federal law. Indeed, a person convicted of murder may "be sentenced to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve thirty years before being eligible for parole." N.J. Stat. Ann. § 2C:11-3(b)(1). Thus, Petitioner's murder sentence fell within the applicable statutory range. *See, e.g.*, *Burtrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *17 (D.N.J. Mar. 28, 2018) (denying federal habeas relief on excessive sentence claim noting petitioner's sentence fell within statutory limits). Accordingly, Petitioner is not entitled to federal habeas relief on Claim V.

F. Claim VI

Petitioner asserts in Claim VI that the trial court erred in permitting the state to admit crime scene photos without laying a foundation for admitting the evidence. More specifically, Petitioner argues that the investigator who took the photographs was not the person present at the time the crime occurred. (*See* ECF 42 at 20). Petitioner raised this issue in his pro se brief on direct appeal.[3] The Appellate Division summarily denied this claim without discussion. *See Klah*, 2012 WL 2427809, at *6. Nevertheless, as described *supra* Part III, this summary denial is still entitled to AEDPA deference on federal habeas review. *See Harrington*, 562 U.S. at 99.

The Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. As described in *supra* Part IV.D, Petitioner is not entitled to federal habeas relief on a claim that the state court erred as a matter of state law. *See Estelle*, 502 U.S. at 67-68. Thus, mere failure to authenticate under state law evidentiary rules would not entitle Petitioner to federal habeas relief.

Instead, Petitioner must show that admitting the photographs made his trial fundamentally unfair to violate his due process rights. *See Keller*, 251 F.3d at 413. Additionally, Petitioner must show that admitting the photographs was not harmless error. *See Brecht*, 507 U.S. at 637. Petitioner fails to do so. Indeed, Petitioner's trial included an eyewitness who saw Petitioner shoot the victim. The eyewitness then followed Petitioner where he was eventually captured by law enforcement. Furthermore, ballistics evidence of the gun found in the vehicle Petitioner was traveling in was found to be the murder weapon to a scientific certainty. Given this extremely strong testimony against Petitioner, even if this Court were to assume that the

---

[3] As with Claims III, IV, and V, Respondents incorrectly argue that Petitioner did not raise this claim in the state courts. (*See* ECF 51 at 19-20). This argument is belied by the record and the claim is considered exhausted.

photographs were admitted in error due to lack of authentication, this Court fails to see how

admitting them had a substantial or injurious effect on the jury's verdict. Accordingly, Claim VI

is denied.

G. Claim VII

Petitioner argues in Claim VII that counsel was ineffective when he failed to call

witnesses that would have challenged the state's theory of the case. Petitioner argues as follows

in his second amended habeas petition:

> It is clear from discovery, that the petitioner and the victim
> were friends, arid had spent the hours before the shooting hanger [sic]
> our [sic] together and playing video games. [T]he jury, however never
> heard about the relationship between the petitioner and the
> victim. [T]hey also never heard that the victim, in the days leading
> up to his death, was acting strangely, and avoided returning
> to his home. [I]t appeared from the statements of friends and
> family that he was afraid of someone. [C]learly that person was
> not the petitioner. A good friend of the victim's Shawn Johnson,
> told investigator that the victim has: been acting weird the
> last several days" and that "he was afraid to go outside" did
> not want to go home. [C]o-defendant [C]hadd [D]illard [sic] stated
> that the petitioner and the victim had been at his house drinking
> and playing games and there was no indication that anything was
> wrong. [T]here is no indication, however, that trial counsels ought to
> review or subpoena these witnesses.

(ECF 42 at 20 (internal quotation mark omitted)). In Petitioner's reply brief, he alludes to other

witnesses that counsel did not call, including Saleemah Anderson and Tameka Walden Johnson, the

victim's girlfriend. Petitioner states Anderson told police the victim and Petitioner had been at her

house with her boyfriend Chadd Dillard drinking and playing video games and there did not appear

to be any problem between them. (*See* ECF 55-2 at 28).

The Appellate Division during PCR proceedings decided this claim as follows:

> To establish a prima facie claim of ineffective assistance of
> counsel, a defendant must demonstrate the reasonable likelihood of
> succeeding on the merits under the test set forth in *Strickland v.*
> *Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed.
> 2d 674, 697–98 (1984), which our Supreme Court adopted in *State*

*v. Fritz,* 105 N.J. 42, 58, 519 A.2d 336 (1987). Defendant must first show that his counsel's performance fell below an objective standard of reasonableness. The standard of "reasonable competence" required of trial counsel, *Fritz, supra,* 105 N.J. at 60, 519 A.2d 336, "does not require the best of attorneys." *State v. Davis,* 116 N.J. 341, 351, 561 A.2d 1082 (1989). Defendant must also show actual prejudice, that is, "a 'reasonable probability' that counsel's derelictions affected the outcome." *State v. Rountree,* 388 N.J. Super. 190, 106 (App. Div. 2006), *certif. denied,* 192 N.J. 66, 926 A.2d 852 (2007) (quoting *Fritz, supra,* 105 N.J. at 58, 519 A.2d 336). "The error committed must be so serious as to undermine [the court's] confidence in the jury's verdict." *State v. Sheika,* 337 N.J. Super. 228, 242, 766 A.2d 1151 (App. Div.), *certif. denied,* 169 N.J. 609, 782 A.2d 427 (2001).

If a petitioner for PCR demonstrates a prima facie case for ineffective assistance of counsel, the trial court must hold an evidentiary hearing. *State v. Preciose,* 129 N.J. 451, 462–63, 609 A.2d 1280 (1992). To establish such a prima facie case, however, "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." *State v. Cummings,* 321 N.J. Super. 154, 170, 728 A.2d 307 (App. Div.), *certif. denied,* 162 N.J. 199, 743 A.2d 852 (1999). Rather, the petitioner must allege facts "supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." *Ibid.* (citing *R.* 1:6–6).

We agree that defendant failed to establish a prima facie case of ineffective assistance of counsel. Judge Fleming concluded that defendant's trial counsel made a strategic decision not to call the co-defendant and the victim's girlfriend at trial, which did not constitute deficient representation. We ascribe substantial deference to defense attorneys in choosing which witnesses to call at trial. *See State v. Martini,* 160 N.J. 248, 266, 734 A.2d 257 (1999) (explaining that courts do not question counsels' reasonable professional judgments). Accordingly, defendant's claim of ineffective assistance in this regard does not overcome the first prong of the *Strickland/Fritz* test because defendant has failed to demonstrate that his counsel was ineffective in this regard. Moreover, even if it were determined to be deficient performance, defendant has not demonstrated that he was prejudiced in the outcome of the proceedings by the omission of the testimony of these witnesses.

*Klah*, 2016 WL 1418315, at *2. The Superior Court had similarly found that Petitioner failed to

establish either prong of *Strickland* on Petitioner's clam that counsel was ineffective for not

calling Walden-Johnson and Dillard to testify. (*See* ECF 60). First, the Superior Court

determined that Petitioner failed to establish that counsel's failure to subpoena these two

witnesses was anything other than trial strategy. (*See id.* at 10). Second, as to the prejudice

prong, the Superior Court noted as follows:

> As there is no requirement that the prosecution establish a motive
> to kill the victim, evidence that defendant and the victim played
> video games together earlier in the day would not have impacted
> the outcome of the proceedings where an eyewitness watched
> defendant shoot the victim. The state's theory of the case was that
> petitioner gunned down the victim in cold blood and therefore the
> fact that petitioner and the victim may have been playing video
> games together earlier in the day does not negate the state's theory
> of the case. Petitioner does not argue that either of these witnesses
> could establish an alibi or that either witness saw the shooting.

(*Id.* at 11).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-

prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show

that considering all the circumstances, counsel's performance fell below an objective standard of

reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013)

(noting that it is necessary to analyze an ineffectiveness claim considering all circumstances)

(citation omitted). A petitioner must identify the acts or omissions that are alleged not to have

been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this

first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See*

*id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to

24

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies…. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice… that course should be

followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the Strickland standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 2011)). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

The state courts' denial of Petitioner's ineffective assistance of counsel claim with respect to counsel's failure to call Tameka Walden-Johnson and Chadd Dillard as witnesses was not an unreasonable application of *Strickland*. Indeed, as noted by both the Appellate Division and the Superior Court, Petitioner failed to show prejudice given that these witnesses only went to a possible lack of motive. However, the decision to deny this claim due to a lack of prejudice was not unreasonable given that there was an eyewitness to the shooting which neither of these witnesses negated whatsoever as aptly noted by the Superior Court. Furthermore, ballistic evidence of the gun found in the vehicle Petitioner was traveling in matched that of the murder weapon to a scientific certainty.

With respect to counsel's failure to call Shawn Johnson and Anderson, it is not altogether clear whether Petitioner raised these two witnesses as issues in his PCR proceedings as the state

courts only discussed Walden-Johnson and Dillard.[4] However, even if these two witnesses were not raised as potential witnesses counsel failed to call at trial, Petitioner would still not be entitled to federal habeas relief because this claim would not be "colorable." *Carpenter v. Vaughn,* 296 F.3d 138, 146 (3d Cir. 2002) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 514–15 (3d Cir. 1997) (construing 28 U.S.C. § 2254(b)(2))); *see also* 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Counsel's purported failure to call these two witnesses would fail because of Petitioner's failure to show prejudice for similar reasons as discussed by the Superior Court with respect to Walden-Johnson and Dillard. More specifically, given that there was a law enforcement eyewitness to the shooting, nothing Petitioner submits about the testimony of these two witnesses would have changed the outcome of the proceeding to a reasonable probability. Furthermore, as noted above, ballistic evidence tied Petitioner as the perpetrator. Accordingly, Petitioner is not entitled to federal habeas relief on Claim VII.

H.  <u>Claim VIII</u>

In Claim VIII, Petitioner argues counsel was ineffective in failing to retain a ballistics expert. The Appellate Division in Petitioner's PCR proceedings analyzed this claim as follows:

> Defendant also cites his trial counsel's failure to retain a ballistics expert as ineffective assistance. The PCR judge permitted defendant to supplement the record with the report and findings of a ballistics expert. The expert corroborated several aspects of the State's analysis, and only questioned whether defendant could have been standing in the street where one of the officers identified he was standing. The PCR judge was nevertheless correct in rejecting defendant's argument. The report submitted to the PCR court confirmed the accuracy of the State's ballistics analysis, and that the testimony would have confirmed that the gun found in the vehicle was the murder weapon.

---

[4] Neither party supplied this Court with Petitioner's PCR filings.

> Defendant asserts that trial counsel should, however, have
> presented evidence contrary to the State's evidence. Defendant's
> reliance on *State v. Bryant,* 237 N.J. Super. 102, 106–107, 567
> A.2d 212 (App. Div.1988), for this proposition is inapposite.
> *Bryant* was a juvenile waiver case in which defense counsel was
> deemed ineffective for failing to present evidence at the waiver
> hearing with respect to the juvenile's potential for rehabilitation, a
> vital component of such a hearing. *Id.* at 107, 567 A.2d 212. In this
> case, there was no clear obligation for trial counsel to call an
> expert for the purpose of disputing the detective's testimony with
> regard to the shooter, especially when such an expert may have
> reinforced the state's theory that the gun found at defendant's feet
> was the murder weapon.

*Klah,* 2016 WL 1418315, at *3. The denial of this claim was not contrary to or an unreasonable

application of *Strickland* and its progeny. Petitioner fails to show how retaining a ballistic expert

would have changed the outcome of the trial to a reasonable probability. Indeed, the ballistic

expert Petitioner retained during the PCR proceedings seemed to reinforce the fact that the gun

found at Petitioner's feet in the vehicle was the murder weapon. Thus, Claim VIII is denied.

I.   Claim IX

Petitioner argues in Claim IX counsel was ineffective for failing to sever the controlled

substance charge from the murder charge. Additionally, Petitioner asserts counsel was

purportedly ineffective in failing to object to prejudicial evidence being admitted at trial. The

Appellate Division analyzed this claim as follows:

> Defendant also asserts that both his trial and appellate counsel
> were ineffective because they failed to argue that the CDS counts
> should have been severed from the indictment for trial purposes,
> and because they failed to raise several issues under *N.J.R.E.*
> 404(b) at trial and on appeal; namely, that the failure to sever
> counts allows prejudicial evidence otherwise prohibited by *N.J.R.E*
> *.* 404(b). We agree with Judge Fleming's conclusion that joinder of
> the criminal charges was appropriate because each offense was
> criminal; the offenses arose from a similar episode; the prosecuting
> officer knew of the offenses at the time the trial commenced; and
> the offenses occurred within the jurisdiction of the same court. *See*

> *State v. Williams,* 172 *N.J.* at 361, 368, 799 A.2d 470 (2002)
> (explaining the appropriate test to determine whether joinder or
> severance is appropriate) (citing *State v. Yoskowitz,* 116 *N.J.* 679,
> 701, 563 A.2d 1 (1989)). Defendant does not successfully establish
> that a motion to sever the counts would have been successful, and
> defendant's motion for an evidentiary hearing in that regard was
> properly denied. *State v. O'Neal,* 190 *N.J.* 601, 618–19, 921 A.2d
> 1079 (2007).

*Klah,* 2016 WL 1418315, at *3. The Appellate Division's denial of this claim was not an

unreasonable application of *Strickland.* Petitioner fails to show that any motion to sever would

have been successful for the reasons expressed by the state courts that counsel was not

ineffective for failing to bring a meritless motion. *See Werts v. Vaughn,* 228 F.3d 178, 203 (3d

Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.")

(citation omitted); *United States v. Jackson*, No. 09-5255, 2010 WL 1688543, at *8 (E.D. Pa.

Apr. 27, 2010) ("Under *Strickland,* Jackson's appellate counsel cannot be ineffective for failing

to raise a meritless issue on appeal.") (citing *United States v. Sanders,* 165 F.3d 248, 253 (3d Cir.

1999)). Accordingly, Claim IX is denied.

J.   Claim X

Petitioner asserts in Claim X ineffective assistance of counsel in failing to object to

opening and closing statements of the prosecutor and appellate counsel's ineffectiveness for not

addressing the state's vouching for the police officer witness. To support this claim, Petitioner

specifically objects to the following statement given by the prosecutor during his opening

statement:

> Well, what do you got? I have an eyewitness. I have someone
> who is coming here this morning and will you that he saw Peter
> [K]lah shoot Charles [B]ennett. Excuse me. but you may be
> wondering, well, what is someone doing out at [N]orth Clinton and
> [M]onmouth at eleven o'clock at night. Brain [sic], why should we
> believe this person? Well, I can tell you this, the eyewitness was
> working, [a]nd what was the eyewitness's job? Ladies and

> gentlemen, the person who saw Peter klah shoot the victim in the
> back was a police officer.

(ECF 42 at 23). With respect to the prosecutor's closing argument, Petitioner states that counsel

should have objected to the following:

1. The prosecutor's statement that no other gun in the world could have committed the

   murder besides the one found under the seat of the person he saw shoot the victim since it

   exaggerated the state's ballistic expert's testimony.

2. The prosecutor's speculation that not only did the victim have marijuana in his

   bloodstream but that marijuana was found at the foot of Petitioner in the car.

(ECF 55-2 at 34).

> The Appellate Division analyzed this claim as follows:

>> Defendant also contends that his counsel was ineffective for failing
>> to object to statements that the State made during opening and
>> closing arguments. The record does not demonstrate conduct "so
>> egregious as to deprive defendant of a fair trial." *State v.
>> Wakefield,* 190 *N.J.* 397, 437, 921 A.2d 954 (2007) (citations
>> omitted).

*Klah,* 2016 WL 1418315, at *3. This Court previously addressed what is needed to sustain a

prosecutorial misconduct claim; namely where the prosecutor's remarks "so infected the trial

with unfairness as to make the resulting conviction a denial of due process." *See Darden,* 477

U.S. at 181. Furthermore, with respect to impermissible vouching, a petitioner "must show that

the prosecutor assured the jury of a government witness's credibility and that this assurance must

have been based on the prosecutor's personal knowledge or other information outside of the

record." *United States v. McNeal,* 588 F. App'x 164, 167 (3d Cir. 2014) (citing *United States v.

Vitillo,* 490 F.3d 314, 327 (3d Cir. 2007); *United States v. Brennan,* 326 F.3d 176, 183 (3d Cir.

2003)).

Petitioner fails to show that he is entitled to relief on any of the arguments within this claim. First, he fails to show he was prejudiced when counsel failed to object to the alleged vouching by the prosecutor of Police Officer Przemieniecki. As noted *supra*, the jury was specifically instructed that the prosecutor's opening statement was not evidence. (*See* ECF 12-7 at 40). The jury is presumed to have followed these instructions. *See Weeks*, 528 U.S. at 234. Furthermore, Przemieniecki's eyewitness testimony that Petitioner shot the victim was in effect corroborated by the ballistics evidence which showed that the gun found under Petitioner's seat in the vehicle was the murder weapon to a degree of scientific certainty. Accordingly, in this Court's view, there is not a reasonable probability that, even assuming *arguendo* that counsel should have objected to the prosecutor's purported vouching for Przemieniecki during his opening, that the outcome of the proceeding would have been different to a reasonable probability. Petitioner's argument that appellate counsel was ineffective for failing to raise this issue on appeal fails for similar reasons as "claims of ineffective assistance of appellate counsel are also governed by the *Strickland* standard." *See Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008) (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000)).

Second, Petitioner objects to the prosecutor's statements during closing argument regarding exaggerating the ballistic evidence. The prosecutor stated during closing argument that "the gun, the shell casings and the bullets are all a hundred percent match." (*See* ECF 12-7 at 31). The prosecutor also stated during closing that the gun found in the vehicle had a "one hundred percent guarantee" according to the ballistics expert as being the one that killed the victim. (*See id.* at 32). These statements by the prosecutor went beyond what the ballistics expert testified to during trial. Indeed, the ballistics expert only testified "to a degree of scientific certainty," (*see* ECF 12-6 at 73), not to a one-hundred percent certainty. Nevertheless, this Court

finds that Petitioner has not shown prejudice as it did not cause a fundamentally unfair trial. Indeed, the jury was expressly instructed that the prosecutor's closing argument was not testimony. (*See* ECF 12-7 at 40). Furthermore, this case not only relied on the ballistics evidence, but also on an eyewitness who saw Petitioner shoot the victim.

Third, Petitioner argues counsel was ineffective in failing to object to comments made by the prosecutor during closing argument regarding marijuana being found in the victim's bloodstream and at the feet of Petitioner. (*See* ECF 12-7 at 28-29). Counsel was not ineffective though for failing to object to these statements by the prosecutor as they were summarizing evidence that was already in the record. (*See* ECF 12-5 at 33, 43-44; ECF 12-6 at 60).

For these reasons, Petitioner is not entitled to relief on Claim X.

K. Claim XI

Petitioner initially states in Claim XI that he reserves the right to supplement issues. By itself, this claim would be insufficient to state any cognizable habeas claim. However, within both his second amended petition and reply brief, Petitioner is more specific with respect to the arguments within this claim. Most notably, Petitioner asserts:

1. Counsel was ineffective for failing to corroborate the testimony of Detective Moreland who stated Przemieniecki's partner on the night of the murder was Bernstein not D'Ambrosio.

2. Counsel was ineffective in failing to call D'Ambrosio concerning Przemieniecki being his partner and witness to the crime.

3. Failure to obtain co-defendant's statement.

(*See* ECF 42 at 23; ECF 36-38).

This Court will review these claims to determine whether they are "colorable" as they do not appear to have been raised in state court.

Przemieniecki testified that D'Ambrosio was his partner on the night of the murder. (*See* ECF 12-5 at 26). Detective Moreland though testified he *thought* it was Detective Bernstein who was driving with Przemieniecki. (*See id.* at 95). Petitioner argues counsel was ineffective by failing to call Detective D'Ambrosio to corroborate that he was Petitioner's partner on the night of the murder.

In *Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001), the Third Circuit found that a habeas petitioner's failure to present any sworn testimony by the witnesses the habeas petitioner claimed counsel should have investigated and called as a witness amounted to a failure to establish *Strickland* prejudice. *See id.* ("In light of Duncan's failure to present any sworn testimony *by Sherman*, he has failed to establish prejudice as a result of [counsel's] failure to interview Sherman.") (emphasis added). Here, Petitioner fails to provide any statement from D'Ambrosio whatsoever regarding what his testimony would have been had counsel called him to testify. Accordingly, Petitioner fails to show to a reasonable probability that the outcome of his trial would have been different had D'Ambrosio been called to testify. Furthermore, to reiterate, the case against Petitioner was extremely strong. It included eyewitness testimony and ballistic evidence that implicated Petitioner as the perpetrator. This further supports denying this claim due to Petitioner's failure to show prejudice.

Next, Petitioner alludes to not being provided a copy of a statement made by co-defendant Dillard. Petitioner asserts that this constituted a *Brady v. Maryland*, 373 U.S. 83 (1963) violation. A due process violation under *Brady* "occurs if: (1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution

withheld it; and (3) the defendant was prejudiced because the evidence was 'material.' "
*Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted). Materiality requires "a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

Petitioner fails to show that he is entitled to relief pursuant to *Brady*. The record belies Petitioner's claim that he was not provided with a copy of Dillard's statement. Indeed, Petitioner's counsel admitted to having received a copy of the statement and that he discussed it with Petitioner prior to trial. (*See* ECF 12-3 at 15). Additionally, it does not appear that Petitioner has come forward with any evidence to suggest that Dillard's statement was either exculpatory or impeaching.

Therefore, for these reasons, Petitioner is not entitled to habeas relief on Claim XI.

L. Claim XII

Petitioner asserts in Claim XII he is entitled to federal habeas relief due to cumulative error. Petitioner raised a claim of cumulative error in his PCR proceedings. However, that cumulative error claim only encompassed his ineffective assistance of counsel claims. Construed liberally, Petitioner may be seeking to bring a cumulative error claim that encompasses all his claims raised in his second amended habeas petition, not just his ineffective assistance of counsel claims. Construed as such, the cumulative error claim appears to be unexhausted. *See Cook v. Nogan*, No. 05-3916, 2016 WL 6892080, at *26 (D.N.J. Nov. 22, 2016) (cumulative error claim deemed unexhausted where Petitioner did not include all claims he seeks to bring within his federal habeas cumulative error claim before the state courts). Nevertheless, this Court can deny this claim on the merits if it is deemed not "colorable."

"Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008); *see also United States v. Roland*, 545 F. App'x 108, 117 (3d Cir. 2013). "Reversal is warranted only when 'the[ ] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *Roland*, 545 F. App'x at 117 (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)); *see also Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721, 123 L. Ed. 2d 353 (1993)) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

Petitioner has failed to show a "colorable" cumulative error claim. To reiterate, the case against Petitioner was extremely strong. It included eyewitness testimony where the witness saw Petitioner shoot the victim. Petitioner was then pursued and captured immediately thereafter by police. Ballistics evidence also implicated Petitioner as the gun found beneath his seat in the vehicle matched that of the murder weapon to a degree of scientific certainty. Accordingly, Petitioner is not entitled to federal habeas relief on Claim XII.

## V.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

## VI.   CONCLUSION

For the foregoing reasons, the second amended habeas petition is denied and a certificate of appealability shall not issue. An appropriate order will be entered.

DATED: ~~August~~ Sept 23 ____, 2020

PETER G. SHERIDAN
United States District Judge